RENDERED: MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0759-MR

CEARRA SHARBONO                                     APPELLANT

v.             APPEAL FROM KENTON CIRCUIT COURT
            HONORABLE THOMAS A. RAUF, JUDGE
            ACTION NO. 21-CI-01200

BRITTNIE SHARBONO                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; JONES AND McNEILL, JUDGES.

McNEILL, JUDGE: Cearra Sharbono ("Cearra") appeals from the Kenton Circuit Court's order denying her motion to modify custody. Finding no error, we affirm.

        In February 2018, Cearra gave birth to a child ("C.S.") with cocaine and cocaine metabolites in its system. The Cabinet filed a dependency, neglect, or abuse ("DNA") petition in Kenton Family Court and C.S. and her three-year-old sister ("K.H.") were placed in the temporary custody of Cearra's sister, Brittnie Sharbono ("Brittnie"). Cearra was unprepared to raise C.S. at the time and did not

participate in the DNA proceedings.  Brittnie was declared *de facto* custodian and awarded permanent custody of the children in September 2018.

Three years later, Cearra filed a motion to modify custody, requesting permanent sole custody.  At a hearing on the motion to modify, Cearra testified she has turned her life around and was ready to raise C.S. and K.H.  In fact, she has successfully raised her youngest child for the past four years.  She has completed parenting classes and is drug-free.  She currently lives with her steady boyfriend in a four-bedroom house with a backyard.

She explained she has been involved with C.S. and K.H. ever since she lost custody.  She moved with Brittnie to Oklahoma for eight months and lived next door.  She would watch the children on weekends.  Cearra claimed that when they returned to Kentucky, the children lived with her for a year because Brittnie said she could not afford them.

She believes the children should be returned to her so they can have their sister and mother in their lives.  They have also bonded with her boyfriend.  During the year they lived with her, he would bathe them and read them stories, and C.S. even called him dad.  She claims the children have said they want to live with her.  She admits she made a mistake four years ago but has changed.  Cearra's mother and boyfriend testified to much the same thing.

Brittnie believes it's in the children's best interest to stay where they are for consistency. C.S. and K.H. have been integrated into her family and treat her children like brothers and sisters. Their home environment is safe and healthy, and the children are doing well in school. Nothing has changed in the children's circumstances since she was granted permanent custody. She feels the children would be stripped from everything they know if returned to Cearra.

She has concerns about Cearra regaining custody. In the past Cearra had boyfriends in and out of her life, drug problems, and questionable parenting (Brittnie testified Cearra once lost her middle child for twenty minutes). She also testified Cearra's current boyfriend broke C.S.'s arm in 2021. The children react negatively when they return from visits with Cearra, not wanting to follow the rules. Brittnie acknowledged all her concerns were based on Cearra's past, but she questioned whether Cearra had changed.

Following the hearing, the family court denied the motion to modify custody. In its written order, the family court commended Cearra for making positive changes in her life but held she had not presented any evidence of a change in the circumstances of *the child or his custodian* as required by KRS[1] 403.340(3) that would allow modification. The court noted the children's and custodian's circumstances were substantially the same as when Brittnie was

---

[1] Kentucky Revised Statutes.

granted permanent custody. The children are in a safe, stable, and consistent environment and have been integrated into Brittnie's family. Cearra filed a motion to alter, amend, or vacate which was denied. This appeal followed.

Whether to modify custody is within the sound discretion of the trial court. *See Pennington v. Marcum*, 266 S.W.3d 759, 769 (Ky. 2008), *as modified* (Oct. 24, 2008). Thus, in reviewing the family court's denial of Cearra's motion to modify custody, we apply a deferential standard of review:

> Our standard of review is set forth in Kentucky Rule of Civil Procedure (CR) 52.01, and findings of fact shall not be set aside unless clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. The question before this Court is not whether we would have reached a different decision, but rather, whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.

*Berzansky v. Parrish*, 583 S.W.3d 6, 7 (Ky. App. 2019) (citations omitted).

Cearra first argues the family court erred when it found there was no change in circumstances that would warrant a modification of custody. She claims it failed to consider the factors in KRS 403.340(3) which support modification. Specifically, she claims Brittnie allowed the children to live with her for a year, the children were integrated into her family during that year, and Brittnie and her

husband live with the children in a two-bedroom apartment "which brings into question the health and safety of those living conditions."

KRS 403.340(3) provides in relevant part:

[T]he court shall not modify a prior custody decree unless after hearing it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, *that a change has occurred in the circumstances of the child or his custodian*, and that the modification is necessary to serve the best interests of the child. When determining if a change has occurred and whether a modification of custody is in the best interests of the child, the court shall consider the following:

(a) Whether the custodian agrees to the modification;

(b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;

(c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

(d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him; and

(f) Whether the custodian has placed the child with a de facto custodian.

(Emphasis added.)

It is clear from the family court's order that it properly considered the statutory factors in denying the motion to modify custody. The family court found Brittnie did not agree to the modification, noting she had concerns about the children's safety if they were to return to Cearra. Concerning whether the children had been integrated into Cearra's family with Brittnie's consent, the court acknowledged that while Cearra claimed Brittnie returned the children to her care for a period, Brittnie subsequently regained care of the children. Finally, the court found the children are in "a safe, stable, and consistent environment," adjusted to school, and integrated into Brittnie's family.

Based upon the evidence, the Court held Cearra had not shown a change in the circumstances of the children or Brittnie warranting modification. KRS 403.340(3) provides that a party seeking modification must prove "that a change has occurred in the circumstances of the child or his custodian[.]" Most of Cearra's testimony concerned the positive changes to her own life. While admirable, the statute requires a change to the circumstances of the *child or his custodian*, not the party seeking modification. Cearra did present evidence the children had been integrated into her family when Brittnie allowed them to stay with her for an extended period. However, the court found "that period of time has since ended, and the minor children are currently in the care and custody of [Brittnie] . . . . This allegation does not demonstrate a change in circumstances of

-6-

the children, since they are currently under the same circumstances that they were under when the 2018 custody decree was entered . . . ."

Further, the court found no change had occurred in Brittnie's circumstances because she provides adequate care for the children and they "have been in a safe, stable, and consistent environment with [Brittnie] since the time of the prior custody decree." While Cearra may disagree with the family court's assessment of the evidence, we cannot say its findings were clearly erroneous or that it abused its discretion in holding no change had occurred in the circumstances of the children or their custodian to allow modification. Because the family court "is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court." *B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005) (citation omitted).

Cearra next argues the family court erred by ignoring her constitutional right to be involved in the upbringing of her children. She cites the well-established rule that "a child's biological parents have a fundamental, basic, and constitutional right to raise, care for, and control their own children." *J.S.B. v. S.R.V.*, 630 S.W.3d 693, 701 (Ky. 2021) (internal quotation marks and citation omitted). She is thankful Brittnie was "able to assist for a small period of time" in caring for her children but since she has turned her life around "she no longer needs [Brittnie] to be primary custodian." Cearra's argument is a little unclear.

Besides asserting her right as a parent to raise her child, she essentially restates her previous challenge to the family court's findings under KRS 403.340(3).

To the extent she is asserting that her right to custody as a parent automatically trumps Brittnie's right to custody, we disagree. Cearra understates Brittnie's position as *de facto* custodian. On September 7, 2018, Brittnie was appointed *de facto* custodian and awarded permanent custody of the children. Cearra did not participate in those proceedings or challenge Brittnie's status as *de facto* custodian. Pursuant to KRS 403.270(1)(b), "[o]nce a court determines that a person meets the definition of de facto custodian, the court shall give the person the same standing in custody matters that is given to each parent . . . ." Thus, Cearra and Brittnie have the same standing in custody matters.

We are not unsympathetic to Cearra's situation. We commend her efforts to improve her life and her desire to regain custody of her children. But Brittnie was appointed *de facto* custodian and granted permanent custody in 2018 and Cearra did not challenge those determinations. KRS 403.340(3) governs custody modifications, and the family court properly considered the statute and its decision to deny modification was not clearly erroneous or an abuse of discretion.

Accordingly, the orders of the Kenton Circuit Court are affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Darrell A. Cox
Covington, Kentucky

BRIEF FOR APPELLEE:

Thomas L. Rouse
Ft. Mitchell, Kentucky